In re WESTSIDE UTILITIES, INC., Debtor.

WESTSIDE UTILITIES, INC., Plaintiff,

v.

ROBERT E. RATLIFF COMPANY, INC., Defendant.

Bankruptcy No. E85–30014.
Adv. No. 85–3160.

United States Bankruptcy Court, N.D. Mississippi.

Aug. 27, 1985.

Clarence R. Scales, Scales & Scales, Jackson, Miss., for Westside Utilities, Inc.

James D. Shannon, Hazlehurst, Miss. and Floyd M. Sulser, Jr., Bennett, Lotterhos, Sulser and Geno, Jackson, Miss., for Robert E. Ratliff Co.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

This matter comes before the Court on a complaint to contest secured creditor's claims and for injunctive relief filed by the plaintiff, Westside Utilities, Inc., hereinafter referred to as Westside; answer and affirmative defenses to said complaint filed by the defendant, Robert E. Ratliff Company, Inc., hereinafter referred to as Ratliff; motion to dismiss filed by Ratliff; answer to motion to dismiss filed by Westside; all parties being represented by their respective attorneys of record; on oral argument and memoranda of law having been considered by the Court; the Court finds as follows, to-wit:

## I.

The Court has jurisdiction of the parties and subject matter of this proceeding pursuant to 28 U.S.C. § 1334(a), and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(C), inasmuch as the Defendant has filed a proof of claim against this estate as a secured creditor in the sum of $120,506.46, and the plaintiff's complaint seeks a set-off against said claim.

## II.

The plaintiff and the defendant entered into an original contract, dated July 17, 1979, wherein the defendant Ratliff was to drill a water well for the plaintiff Westside for the contracted sum of $68,508.40. The well was completed by Ratliff, but not according to the original contract specifications, and Westside commenced using water beginning November 26, 1979. A second contract was negotiated and entered into by Westside and Ratliff concerning this same water well on June 2, 1980. This particular contract set out certain differences in the well "as built" and the original contract specifications. The contract price was revised upward to $72,444.17, and certain performance guaranties for the well were designated as running for a one year period commencing November 1, 1979. To evidence the contract price, Westside executed a promissory note in favor of Ratliff in the sum of $72,444.17, dated June 16, 1980, bearing interest at the rate of 14% per annum, payable in 59 monthly installments at the rate of $1,124.80, with a final balloon payment on the sixtieth month in the sum of $48,860.02. This promissory note was secured by a deed of trust encumbering the real property owned by Westside, filed on July 1, 1980, in Book A–72 at page 247 of the land records of Grenada County, Mississippi, as well as, a Uniform Commercial Code Financing Statement encumbering certain personal property owned by Westside in addition to its certificate of public convenience and necessity to operate as a utility company. Problems developed with the well; so on November 13, 1980, Westside's attorney noticed Ratliff, as well as, the Trustee designated in the aforementioned deed of trust, by registered mail that there were deficiencies in the gallons per minute being produced by the well at the specified pounds per square inch pressure.

On October 11, 1982, Westside filed a complaint for specific performance in the Chancery Court of Grenada County, Mississippi, against Ratliff alleging that the well had ceased to operate on May 24, 1982. *The complaint sought to require Ratliff to remedy the well deficiencies pursuant to the contract and demanded a set-off totaling $1,950.00, against the amount that Westside owed Ratliff pursuant to the aforementioned promissory note.* $1,450.00, of this set-off demand was to recover a payment allegedly made to J.B. Cain Well Drilling for purported well repair

services, and $500.00 of the demand was to recover escalated electricity bills incurred by Westside. The complaint was styled *Westside Utilities, Inc., v. Robert E. Ratliff and Company.*

Also, on October 11, 1982, Westside filed a complaint for a preliminary prohibitive injunction against Ratliff in the Chancery Court of Grenada County, Mississippi, seeking to enjoin the foreclosure of the aforementioned deed of trust securing the promissory note in the sum of $72,444.17, executed by Westside in favor of Ratliff. This complaint was styled *Westside Utilities, Inc., v. Robert E. Ratliff and Company and Mitchell M. Lundy, Jr., Trustee.* Both complaints were assigned the same cause of action number in the Chancery Court, i.e., 82–10–225. An order was entered by the Chancery Court granting the preliminary prohibitive injunction on October 14, 1982, halting the foreclosure which had been scheduled for October 19, 1982, pending a hearing on the merits of the complaint seeking specific performance. An answer to the complaint for specific performance was subsequently filed by Ratliff which alleged that Ratliff was not permitted by Westside to make repairs or to correct any deficiencies in the well, in addition, that certain problems with the well equipment were caused by the negligence of Westside.

A final decree was entered in Cause No. 82–10–225, Chancery Court of Grenada County, Mississippi, on January 11, 1985, following the presentation of evidence in open court. The court found that upon the admissions of the President of Westside, S.A. Wilbourn, that Westside had, in fact, refused Ratliff permission to make necessary repairs and or corrections to the well. The court found also that Westside was in default under the terms of the promissory note secured by the deed of trust. The decree stated that the court had jurisdiction of the parties to and the subject matter of the proceeding, and ordered the following, to-wit:

(1) The Complainant's Complaint For Specific Performance is hereby denied and dismissed on the merits.

(2) The preliminary prohibitive injunction issued herein is hereby dissolved.

(3) The Complainant is hereby ordered to pay to Defendant's attorneys as attorney's fees the sum of $1400.00.

(4) All costs herein are charged to Complainant.

(5) Complainant's bond shall stand for the payment of the foregoing sums to the full extent of the bond.

Westside filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code on February 5, 1985. Subsequently, Westside filed this adversary proceeding against Ratliff through a pleading denominated as Complaint to Contest Secured Creditor's Claim and for Injunctive Relief. In essence, this complaint seeks to set-off certain damages incurred by Westside against its promissory note obligations owed as aforesaid to Ratliff. Westside alleges that since the well drilled by Ratliff is inoperable that it should be allowed to set-off all repair costs to correct the deficiencies. In addition, Westside alleges that it should be allowed to set-off the increased costs that it has been required to expend in purchasing water for the system from the City of Grenada, this expense being estimated in the sum of $30,000.00. The complaint further alleges that the interest rate charged under the aforementioned promissory note is usurious, and that the note is therefore unenforceable. Lastly, the complaint seeks to enjoin Ratliff from the prosecution of litigation in the Circuit Court of Grenada County, Mississippi, which amounts to an effort by Ratliff to collect the promissory note from the individual officers and/or directors of Westside, i.e., S.A. Wilbourn, Ruth Wilbourn, and Janice Wilbourn. Concerning this last request for relief, the Court notes that following a previous hearing, all of the parties have agreed to refrain from the prosecution of any other litigation in any other courts until this matter has been properly resolved by this Bankruptcy Court.

### III.

The issue presently before this Court by virtue of Ratliff's motion to dismiss is whether this Bankruptcy Court is barred from litigating the present action based on the doctrines of (1) res judicata; (2) collateral estoppel; or (3) collateral attack.

Res judicata will be considered first.

The principle behind the doctrine of res judicata is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). An action is barred by res judicata or "claims preclusion," *United Home Rentals v. Texas Real Estate Commission,* 716 F.2d 324, 328 (5th Cir.1983), if it meets four tests. These tests are: "the parties must be identical in both suits; the prior judgment must have been rendered by a court of competent jurisdiction; there must have been a final judgment on the merits; and the same causes of action must be involved in both cases." *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir.1983). Not only does the doctrine of res judicata apply in the bankruptcy context, *Katchen v. Landy,* 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966), but the particular tests described above have been applied by the bankruptcy courts. *Matter of Supple,* 14 B.R. 898, 903 (Bkrtcy.Ct.—1981).

In determining whether the two causes of action are one and the same, the Fifth Circuit has held that the test is "whether the primary right and duty or wrong are the same in each action." (*Nilsen,* supra, at 559.) Further, the court in *Nilsen* held that a claimant may not bring a second cause of action based on a different theory of recovery for the same injury because "a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." *Id.* at 564. *Nilsen* also held that "res judicata ... bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication." *Id.* at 560 [emphasis in original].

Application of the doctrine of res judicata once the previous tests have been satisfied, is obligatory upon the court as it "serves the vital public interest beyond any individual judge's ad hoc determination of the equities in a particular case." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981).

As applied to the bankruptcy courts, the previous rulings are not without exception. The case of *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), carves out an exception to the doctrine in the area of fraud. *Brown* is a case dealing with § 17(a)(2) of the 1898 Bankruptcy Act. The facts are as follows: Brown, the plaintiff, guaranteed loans made to Felsen, the defendant. In the state court action, a creditor-bank brought an action against Felsen as obligor on the note and Brown as guarantor. Brown filed a cross-claim against Felsen for misrepresenting and withholding certain material facts in order to induce him to guarantee the loan. The action was settled by stipulation; the creditor-bank received a joint and several judgment against Brown and Felsen, and Brown as guarantor received judgment against Felsen on the cross-claim. The stipulation, as well as, the judgment, however, did not mention the basis of Felsen's liability to Brown. Subsequently, Felsen filed for bankruptcy. Brown sought to establish that the debt owed to him was non-dischargeable because of Felsen's fraud in inducing him to sign as guarantor on the loan. Felsen claimed that there was no mention of fraud in the state court judgment and that Brown was prevented from re-litigating the fraud issue in the bankruptcy court based on the doctrine of res judicata. The Supreme Court, however, refused to apply the doctrine holding that the bankruptcy court was not "confined to a review of the judgment and record of a prior state court proceeding when considering the dischargeability of ... [a] debt." *Id.* at 138–39, 99 S.Ct. at 2213. The Court went on to hold that

"[t]he mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." *Id.*

The rationale in *Brown* has been extended to 11 U.S.C. §§ 523(a)(2), (4), (5), and (6) (dealing with exceptions to debt dischargeability), *Matter of Eskenazi,* 6 B.R. 366, 368 (Ninth Circuit BAP—1980) and *In Re Cartner,* 9 B.R. 543, 546 (Bkrtcy.M.D.Al.—1981).

■ As to the causes of action being the same, it is a well settled rule that an action for specific performance and its subsequent determination will bar a future action for damages provided the other tests in *Nilsen* have been satisfied. *See* 71 Am. Jur.2d, Specific Performance, § 226. This is based on the broader principal that res judicata will bar not only matters that were actually determined in a prior suit *but all matters that could have been raised in the prior suit. In Re Abco Metal Corporation,* 36 B.R. 344, 348 (Bkrtcy.N.D.Il.—1984). This ruling has also been applied where the state court denied specific performance and there was a subsequent action in federal court for damages. *Boys Town, U.S.A., Inc. v. World Church,* 349 F.2d 576, 577 (9th Cir.) *cert. denied,* 383 U.S. 910, 86 S.Ct. 894, 15 L.Ed.2d 665 (1965).

Westside cites the case of *McVay v. Castenara,* 152 Miss. 106, 119 So. 155 (1928), as recognizing an exception to the hard and fast rule against splitting causes of action. *McVay* involved circumstances of excusable ignorance. In *McVay,* the plaintiff sued defendant for specific performance in regard to a contract for the sale of land. The plaintiff had entered into a separate agreement with a third party who was to buy the land when it was turned over to him. The plaintiff won the first action against the defendant. Subsequent to the first action, the plaintiff's buyer refused to buy the land; plaintiff then sued the original defendant, not his potential buyer, for damages. The court stated that the plaintiff did not know about the claim for damages at the time of the former suit and that

he should be able to plead his ignorance in the second suit. *Id.* at 156.

■ Considering the foregoing analysis as it applies to the instant case, the applicability of the *Nilsen* doctrine is apparent. The state court decision was rendered by a court of competent jurisdiction. Not only does the final decree of the state court decision hold that it had jurisdiction over the subject matter and the parties, but neither party challenged such jurisdiction.

As to the requirement that there be a final judgment on the merits, this is evidenced by the final decree entered on January 11, 1985. The decree states that after having heard testimony on behalf of the complainant (plaintiff Westside herein), the court, upon defendant's motion, dismissed the complaint. The state court based its findings on both pleadings and proof presented in open court.

Coincidentially, in the state court proceeding, Westside sought specific performance and set-off for fees paid to another well service company, i.e., J.B. Cain Well Drilling, as well as, a set-off resulting from its escalating electricity bills. The sums sought to be set-off were actually damage claims allegedly sustained by Westside because of the deficiencies in the water well construction. Although the set-off claims appearing in the Chancery Court proceeding are not identical to the claims appearing in the complaint filed in this bankruptcy proceeding, i.e., a set-off claim for the anticipated well repair costs and a set-off claim for the cost of obtaining water from the City of Grenada, without question, they represent similar causes of action. All of these claims, including the claim of usury, were in existence and could have been litigated in the Grenada County Chancery Court. To support this conclusion, the Court would point out the following: (a) before the Chancery Court lawsuit was filed, J.B. Cain Well Drilling had already been on the property site ostensibly for repair purposes; (b) since the well had ceased production on May 24, 1982, water was obviously being purchased to service the system's customers from the City of

Grenada; and (c) the interest rate provided in the promissory note had been subject to question since its execution on June 16, 1980, well over two years before the commencement of the Chancery Court proceeding. Therefore, the requirement necessary to establish res judicata, i.e., that the identical cause of action was or could have been raised in the earlier proceeding, is satisfied. The plaintiff herein is now barred from seeking set-off damages which it could have demanded earlier, based on case law which prohibits the splitting of causes of action. The exception to this rule as stated in the *McVay* case has no application here. It is a case dealing with unknown and undisclosed damages that arose subsequent to the initiation of the first suit, but prior to the commencement of the second suit. It dealt with damages unknown and unforeseeable to the plaintiff at the time of the initial litigation.

As to the requirement that the parties be the same in both causes of action, the plaintiff contends that since the final decree dissolving both the preliminary injunction and denying the request for specific performance is styled *Westside Utilities, Inc. v. Robert E. Ratliff & Company and Mitchell M. Lundy, Jr., Trustee,* then there is no complete identity of the parties. The final decree encompassed both the preliminary injunction, which necessarily named the Trustee in the deed of trust as a nominal party, as well as, the suit for specific performance and set-off, which is pertinent here. The suit for specific performance and set-off was styled *Westside Utilities, Inc. v. Robert E. Ratliff & Company, Inc.* The final decree merely encompassed both proceedings filed in the same cause of action. In substance, there is no question but that the parties are identical.

### IV.

The fact that there has been a valid state court judgment is to be accorded substantial weight. The original suit for specific performance and set-off was between the plaintiff and defendant herein, and as between those parties the issues presented received full review and fair resolution by a competent court. The fact that the present bankruptcy action is based on similar, although not identical, damage and/or set-off claims is of little consequence as determined by case law. To allow Westside a full hearing on its revised claims for damages and/or set-off in the bankruptcy court would amount to a complete re-litigation of matters previously decided, or which could have been previously decided by a court of competent jurisdiction.

### V.

In conclusion for the reasons cited hereinabove, the motion to dismiss, filed by Ratliff, is sustained. Inasmuch as the doctrine of res judicata bars this litigation, I find no need to discuss the issues of collateral estoppel or collateral attack.

An Order will be entered consistent with this Opinion.