**In the Matter of HONEYCOMB, INC., Debtor.**

**OFFICIAL CREDITORS' COMMITTEE OF HONEYCOMB, INC., Plaintiff,**

**v.**

**FIDELITY BANK, N.A., Defendant.**

**Bankruptcy No. 84 B 10859.
Adv. No. 86–5426A.**

United States Bankruptcy Court, S.D. New York.

April 10, 1987.

Hahn & Hessen, New York City, for Creditors Committee; David I. Blejwas, David Cimenisi, Michael Schreiber, of counsel.

Latham & Watkins, New York City, for Fidelity Bank; Robert J. Rosenberg, James E. Brandt, of counsel.

## MEMORANDUM OPINION AND ORDER ON MOTION TO STRIKE JURY DEMAND

BURTON R. LIFLAND, Bankruptcy Judge.

### I. Background

On June 8, 1984, an involuntary petition for relief under chapter 11 of Title 11, United States Code ("the Code") was filed with this court against Honeycomb, Inc. (the "Debtor"). On June 14, 1984, the official unsecured creditors' committee of the debtor (the "Creditors Committee" or the "Committee") was appointed. In January of 1986, Fidelity Bank, N.A. ("Fidelity"), an unsecured creditor, filed a proof of claim with this court against the Debtor's estate in the amount of $465,401.13 (claim # 41). On May 14, 1986 this court confirmed the Debtor's Plan of Reorganization. Pursuant to Article VIII of the confirmed plan, the Committee has the exclusive right and authority to prosecute and defend any and all claims and causes of action relating to the debtor's estate. On May 22, 1986, the Committee commenced this proceeding to expunge Fidelity's claim. The Committee filed its objection to the claim as well as a counterclaim pursuant to 28 U.S.C. 157(b)(2)(C) and to sections 550 and 553 of the Bankruptcy Code to recover amounts allegedly wrongfully set off by Fidelity and a counterclaim pursuant to Sections 547 and 550 of the Code to recover allegedly voidable preferences. On June 25, 1986 Fidelity filed a response to counterclaims and a jury demand in which Fidelity requested a jury trial and alleged that the

present adversary proceeding is not a core proceeding within the meaning of 28 U.S.C. 157(b). On July 25, 1986 the Committee filed a motion and supporting memorandum to strike Fidelity's jury demand and jurisdictional allegation.

The issues to be decided in this motion are a) whether the present adversary proceeding constitutes a "core" proceeding within the meaning of 28 U.S.C. 157(b), and b) whether Fidelity's request for a jury trial should be granted. The motions had been held in abeyance pending other motion practice and ongoing negotiations. Fidelity's request and the Committee's motion to strike is now ripe for determination.

## II. Discussion

### A. *The Committee's Counterclaims are Core Proceedings*

Under 28 U.S.C. 157(b)(1) Bankruptcy Judges must "hear and determine all cases under Title 11, and all core proceedings arising in a case under Title 11, . . . ." 28 U.S.C. 157(b)(2) provides a non-exclusive list of core proceedings. Included in that list are, "counterclaims by the estate against persons filing claims against the estate", 28 U.S.C. 157(b)(2)(C) and "proceedings to determine, avoid, or recover preferences" 28 U.S.C. 157(b)(2)(F). If the plain meaning of these Code provisions were applied to the present adversary proceeding, it would be clear that the adjudication of the committee's counterclaims against Fidelity ("a person who has filed a claim against the estate") would be core. However, it is necessary to apply § 157(b)(2) in light of the Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See e.g., Interconnect Telephone Services, Inc. v. Farren*, 59 B.R. 397 (S.D.N.Y.1986); *In re Bar M. Petroleum Co. Inc.*, 63 B.R. 343 (Bankr.W.D.Texas 1986).

The holding in *Northern Pipeline*, and § 157(b)(3) mandate that we do not apply § 157(b)(2) literally and broadly, but that the outer limits of that section be determined by the Bankruptcy Courts, *In re*

*Lion Capital Group*, 46 B.R. 850, 854 (Bankr.S.D.N.Y.1985). The relevant post Northern Pipeline caselaw provides several standards by which proceedings may be properly classified as "core" or "non-core".

■ Merely categorizing a proceeding as one of the fifteen enumerated core proceedings is not enough to confer core jurisdiction upon the Bankruptcy Court. A proceeding is core when there exists some connection between the claims of the creditor and those of the trustee. *In re Lombard-Wall Inc.*, 48 B.R. 986, 991 (S.D.N.Y. 1985). Generally speaking, core proceedings do not arise under traditional state law claims and have no life of their own in the absence of the bankruptcy petition. *See, e.g., Interconnect Telephone Services v. Farren*, 59 B.R. 397 (S.D.N.Y.1986).

Courts will classify actions involving predominantly state law claims as core proceedings when the defendants are creditors of the estate who have asserted claims against the estate. "Where a creditor of the estate files a proof of claim and the estate counterclaims against him, or where the estate brings an action against a creditor and the creditor counterclaims asserting a setoff, it is entirely appropriate for the action to be classified as a core proceeding." *Interconnect* at 400–401. It is necessary that the claims in question be sufficiently connected to the bankruptcy case in order to prevent a jurisdictional ambush of parties whose rights are not affected by the bankruptcy filing, and whose claims would exist in their present form even absent a bankruptcy case. *See e.g., In re Nanodata Computer Corp.*, 52 B.R. 334, (Bankr.W.D.N.Y.1985); *In re Yagow*, 53 B.R. 737 (Bankr.N.D.1985). Application of the facts in the present case to the enumerated standards compel this court to hold that the Committee's counterclaims are "core" within the meaning of § 157(b)(2)(C) and § 157(b)(2)(F).

■ The Committee's counterclaims are directly connected to Fidelity's asserted claim. Fidelity is an unsecured creditor who filed a proof of claim against the Honeycomb estate. Fidelity's claim

against Honeycomb is for unpaid loan balances allegedly still due and owing by Honeycomb to Fidelity. Fidelity seeks the benefit of the equitable distribution rights of creditors inherent in the Bankruptcy Code, and therefore is a party in interest in the case.

The Committee's counterclaims seek to recover allegedly voidable preferences and wrongful setoffs pursuant to sections 553, 547 and 550 of the Code. While the Committee's counterclaims are not exclusively dependent on the Code for a legal basis, the claims in their present form and the context in which they are being asserted, would not have existed but for the fact that Honeycomb is a debtor under the jurisdiction of this Court. Relief under Sections 547 and 553 are clearly appropriate matters for bankruptcy judges to decide. *See e.g., In re Westside Utilities, Inc. v. Robert E. Ratliff Company*, 53 B.R. 254 (Bankr.N.D. Mississippi 1985).

In addition, the determination of the counterclaims asserted are inextricably connected to the determination of Fidelity's claim. Deciding whether Honeycomb still owes Fidelity money and whether Fidelity wrongfully set off Honeycomb's funds or received voidable preferences, are steps integral to the bankruptcy court's duty and function of restructuring debtor-creditor rights in furtherance of the distribution scheme of Title 11.

The facts in this case are clearly distinguishable from ·cases where purely unrelated state law claims are asserted against parties uninvolved in the bankruptcy case and who do not derive any rights from the bankruptcy proceeding. *See, e.g., In re Turner*, 724 F.2d 338 (2nd Cir.1983). (In a no-asset Chapter [11], where a Trustee had been appointed, and the Debtor's cause of action against landlord for conversion had been declared exempt from the estate, that action by Debtor was not even

"related to" the bankruptcy proceedings and the bankruptcy court did not have jurisdiction to hear the matter.)

Finally, Fidelity bases a great deal of its jurisdictional challenge on a lower court decision which was subsequently reversed on appeal, *Associated Grocers of Nebraska Cooperative Inc. v. Nabisco Bakers*, 46 B.R. 173 (Bankr.D.Neb.1985) (§ 157(b)(2)(F) (preference proceedings) unconstitutionally vests Article III powers with judges lacking the commensurate protections) *rev'd*, 62 B.R. 439 (D.Neb.1986) ("After recognizing the necessity of effective adjudication of rights under 11 U.S.C. §§ 547(b) and 549(a) and analyzing the order and nature of these rights, this court does not believe the independent role of the judiciary in our constitutional scheme is threatened by a bankruptcy judge entering final orders in such matters under 28 U.S.C. 157(b)(2)(F)." *id.* at 446). In light of the appellate decision, Fidelity's reliance on the bankruptcy court's decision is misplaced.

For all the foregoing reasons, we hold that the Committee's counterclaims are core proceedings within the meaning of 28 U.S.C. 157(b)(2).

B. *Fidelity does not have a Right to a Jury Trial on the Debtor's Counter-Claims of Preference and Set-off.*

The question of right to jury trial in the Bankruptcy Court is two-fold.[1] It consists of (1) whether the Bankruptcy Court has the jurisdiction to conduct a jury trial at all and (2) whether the parties have a substantive right to a jury trial, either pursuant to a statute or pursuant to the Seventh Amendment.

■ Although there is some contrary authority, *see, e.g., Holland Ins. Co. v. Shephard J. Roy*, 777 F.2d 992, 999 (5th Cir. 1985), (stating "there is some doubt whether bankruptcy courts can conduct jury tri-

---

1. The question is also exceedingly difficult. For an analysis of recent case law on the subject *see,* Note, *The Availability of Jury Trials in Bankruptcy Courts,* 4 Bankr.Dev.J. 257 (Emory University) (1987). While the article discusses the rule of law set forth in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), and its

impact in the wake of the Bankruptcy Code, Emergency Rules and the 1984 Amendments, it does not review the continued viability of *Katchen* in light of the Supreme Court's recent decision in *CFTC v. Schor,* 478 U.S. ——, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986).

als in light of *Marathon* and the Bankruptcy Amendments Act."); *and In re Brown,* 56 B.R. 487 (Bankr.D.Md.1985), the caselaw in this district interprets the post *Marathon* Bankruptcy Emergency Rules and Bankruptcy Rules as conferring jury trial jurisdiction on bankruptcy courts in certain proceedings. *See, e.g., In re O.P.M. Leasing Services, Inc.,* 48 B.R. 824 (S.D.N.Y. 1985); *In re Lombard-Wall Incorporated,* 48 B.R. 986 (S.D.N.Y.1985); *In re Paula Saker & Co., Inc.,* 37 B.R. 802 (Bankr.S.D. N.Y.1984). This district has reasoned that when the bankruptcy court has the power to issue a final judgment in a case, it follows that the bankruptcy court also has the authority to conduct a jury trial. Since "there is no constitutional objection to the bankruptcy court entering a final judgment in a traditional bankruptcy dispute, there can be no similar objection to its conducting a jury trial in order to reach the decision embodied in the judgment." *In re Paula Saker & Co., Inc.,* 37 B.R. 802, 811 (Bankr.S.D.N.Y.1984). Thus, this Court has the authority or power to conduct jury trials in those proceedings where a substantive right to a jury trial exists. *See, also, In re Rodgers & Sons, Inc.,* 48 B.R. 683 (Bankr.E.D.Ok.1985), *In re Gaildeen Industries, Inc.,* 59 B.R. 402 (N.D.Cal. 1986), *In re Morse Electric Co., Inc.,* 47 B.R. 234 (Bankr.N.D.Ind.1985) (Jury trials are not prohibited in bankruptcy).

This court's jurisdictional authority to hold jury trials, however, does not give rise to an automatic right to a jury trial to every party who appears before it. Rather, the party who invokes the court's jurisdiction to hold a jury trial must first establish that it has a guaranteed right to such a determination. A determination of the

right to a jury trial under the Seventh Amendment requires the consideration of three factors: 1) the custom with reference to the issue in dispute prior to the merger of law and equity in the federal system, 2) the nature of the remedy sought and 3) the practical abilities and limitations of juries. *Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970). The third factor is easily disposed of. The issues presented herein are not beyond the practical abilities of a jury. Thus, we must analyze the nature of the causes of action involved and the remedies sought. If the causes of action and remedies sought are historically equitable in nature, then no right to jury trial exists.

Some courts, asserting that the core proceedings are inherently equitable in nature, have adopted a rule of "no right to a jury trial" in core proceedings. *In re I.A. Durbin, Inc.,* 62 B.R. 139, 145 (S.D.Fla. 1986); *In re Mansker,* 60 B.R. 803, 806 (Bankr.D.Mass.1986); *Matter of Baldwin United Corp.,* 48 B.R. 49, 56 (Bankr.S.D. Ohio 1985); *In re O'Bannon,* 49 B.R. 763, 765–66 (Bankr.M.D.La.1985). *But see In re M & E Contractors,* 67 B.R. 260, 265–66 (N.D.Tex.1986).[2]

The proposition that bankruptcy courts are inherently courts of equity is rooted in the Supreme Court case, *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). In that case, decided prior to the 1978 Bankruptcy Code and the 1984 Bankruptcy and Federal Judgeship Amendments ("BAFJA" or "the 1984 Amendments"), the Court held that where a Trustee objects to a creditor's claim and seeks to have money paid to that creditor declared a voidable preference and seeks a judgment

---

**2.** Judge Buchmeyer has suggested in *M & E Contractors v. Kugler-Morris General Contractors, Inc.,* "The practical effect of this decision [granting jury trials in core proceedings], however, will be limited: by its terms, the seventh amendment attaches only to "suits at common law," because most suits "at common law" will be non-core or related proceedings rather than core proceedings, and thus triable in state courts or in the federal district courts, the opportunity for jury trials in bankruptcy courts will be limited, indeed." 67 B.R. 260, 265–66 (N.D.Texas 1986). Other Courts do not see this

limitation and have found that preference actions, tried by jury could have a profound, if not devastating effect on the orderly administration of bankruptcy courts. *See, e.g., In re Southern Industrial Banking Corp.,* 66 B.R. 370, (Bankr.E. D.Tenn.1986), *appeal dismissed* 70 B.R. 196 (E.D.Tenn.1986). (Several hundred preference defendants requested jury trials. The bankruptcy court held that there was no right to a jury trial in preference actions. The District Court, agreeing in dicta, denied the appeal as interlocutory.)

for the amount of the preference, the bankruptcy court exercises equitable summary jurisdiction over the dispute. That summary jurisdiction is inherently equitable and the creditor, therefore, has no right to a jury trial. "These courts are essentially courts of equity and they characteristically proceed in summary fashion to deal with assets of the bankrupt they are administering." *Id.* at 327, 86 S.Ct. at 471 (citations omitted).

The *Katchen* court reasoned that once a creditor had filed a claim against the Debtor's estate, the Trustee, under the Act, was bound to investigate that claim, object to that claim where appropriate, and the bankruptcy court was bound to pass on that claim and objections to it. *Id.* at 329, 86 S.Ct. at 472. As § 57(g) of the Act forbade the allowance of a claim where the creditor had received a preference, a Trustee's defensive assertion of a voidable preference was "part and parcel of the allowance process and [was] subject to summary adjudication by the bankruptcy court." *Id.* at 330, 86 S.Ct. at 473.

By filing a claim against the Debtor's estate, the creditor had asserted "an equitable claim to a pro rata share of the *res.*" *Id.* at 336, 86 S.Ct. at 476. That claim could not be determined or allowed until the creditor restored his preference to the *res, id.* Thus, by filing the claim, the creditor could be said to have "waived" his rights to a jury trial in the "legal" preference action, or that the creditor had converted the legal nature of the preference claim to one of equity. *Id.*

The jurisdictional scheme in force at the time of *Katchen v. Landy* distinguished between the summary jurisdiction of the bankruptcy court concerning the assets in possession of the court, and the plenary jurisdiction of state and federal courts over other disputes between the Debtor and non-debtors who were not subject to the jurisdiction of the bankruptcy court. *See,* Norton Bankruptcy Law & Practice Vol. 1, § 502.

Thus, under the jurisdictional scheme of the Bankruptcy Act, where the Trustee wished to assert a voidable preference claim against a non-debtor who had not submitted to the bankruptcy court's jurisdiction by filing a proof of claim, the Trustee was required to pursue his action in a plenary proceeding in state or federal court where the non-debtor would have retained his right to a jury trial if the Trustee sought legal relief. *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 94–95, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932).

Under the Bankruptcy Act, then, the jurisdiction of the bankruptcy courts was solely equitable and never encompassed matters involving adjudication of rights to be determined by a jury. Congress attempted, in the Bankruptcy Code of 1978 to significantly widen the scope of the jurisdiction available to bankruptcy courts. (Indeed some have contended that under the jurisdictional scheme set forth in 28 U.S.C. § 1471, Bankruptcy courts would have jurisdiction over any civil proceeding arising under title 11. *See,* Nortons Bankr.L.Prac. § 5.06, p. 34.) Thus the bankruptcy court would now have jurisdiction over actions *initiated* by the Trustee pursuant to his avoidance powers because "the Trustee would be claiming on a right given by one of the sections.... of title 11." H.R.Rep. No. 95–595, 95th Cong., 1 Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6401.

Under the jurisdictional scheme of the 1978 Act, then, a non-debtor could not avoid the jurisdiction of the bankruptcy court by choosing not to file a claim where the Trustee asserted a claim or right against that person which was based upon a provision of title 11.

The jurisdictional scheme enacted in 1978 was found unconstitutional by the Supreme Court in *Northern Pipeline Construction v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) in that it vested the authority to adjudicate state created rights in non-Article III judges. In 1984 Congress enacted a new jurisdictional scheme which, while limiting the scope of jurisdiction, provided the bankruptcy court with greater jurisdiction than that available under the 1898 Bankruptcy Act.

Under 28 U.S.C. § 157, Bankruptcy court proceedings may either be "core" or "related to" a case under title 11. The core matters in which the Bankruptcy court may enter final judgment are set forth, though not exhaustively, in § 157(b)(2). These matters include claims resolution, *preference, fraudulent conveyance,* set-off, turnover actions, and matters concerning the administration of the estate. As can be seen this grant of jurisdiction in "core" matters significantly exceeds that available under the "summary" jurisdiction of the Act.

The widened scope of jurisdiction available under § 157 raised interesting questions in light of the *Ross v. Bernhard* analysis of jury trial rights. Many preference powers of a Trustee, for example, are entirely creations of federal statutes. Some authorities have thus reasoned that all preference actions are equitable in nature and should be heard without a jury. *See, I.A. Durbin, In re Mansker, supra.* To the same effect *see In re Reda,* 60 B.R. 178 (Bankr.N.D.Ill.1986) (Preference ac-

tions do not seek damages, but rather the return of a preference for a more equitable distribution ... there is no common law right to a jury trial in preference actions).[3]

However, even should it be true that preference defendants retain a right to a jury trial on non-*Katchen* or *Schoenthal* facts (i.e., the Trustee asserts the preference offensively), when the preference defendant has filed a claim against the debtor's estate, the rationale of *Katchen* still holds. *See, CFTC v. Schor,* 478 U.S. ——, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), *In re Southern Industrial Banking Corp.,* 70 B.R. 196 (E.D.Tenn. 1986), *In re Sun West Distributors, Inc.,* 69 B.R. 861 (Bankr.S.D. Cal.1987) (Jurisdiction by consent can be inferred from the filing of a creditor's claim.)

In such instances the defendant has made an "equitable claim to a pro rata share of res" which cannot be determined until the issues of preference (or conveyance, etc.) are resolved. *See, In re Baldwin-United,* 48 B.R. 49, 54 (Bankr.S.D.Ohio 1985) ("By filing a proof of claim, a party

**3.** Historically, some of the actions now considered 'core' proceedings were argued by some courts to be legal in nature, thus giving rise to a right to a jury trial. Preference actions, for example, unless raised defensively by the Trustee in the process of claims resolution, have been thought by some courts to be legal in nature. *See, e.g., In re Paula Saker & Co.,* 37 B.R. 802 (Bankr.S.D.N.Y.1984), *and In re Adams, Browning & Bates, Ltd., supra, but, see contra, In re Reda, supra,* (preference actions are equitable), and *In re Dunoco Corp.,* 56 B.R. 137 (Bankr.C.D. Cal.1985) (A fraudulent conveyance action seeking money damages or reconveyance in the alternative is primarily equitable.)

28 U.S.C. § 1480, enacted in the 1978 Bankruptcy Code, provided that the right of a party to a jury trial on a given matter was to be preserved under the 1978 Code. Even after Congress, in the 1984 BAFJA amendments, enacted § 28 U.S.C. 1411, which provides for jury trials in only two circumstances (wrongful death and personal injury claims) many courts, reasoned that the right to a jury trial still exists, absent outright prohibition. *See, e.g., In re Rodgers & Sons, Inc.,* 48 B.R. 683 (Bankr.E.D.Okla.1985). Some courts, however, have found that § 1480 has been implicitly repealed by § 1411, and thus cannot be invoked to justify jury trials in Bankruptcy Court. *See, In re Southern Industrial Banking Corp.,* (District Court opinion), *supra.* Similarly, current Rule 9015 of the Bankruptcy Rules of Procedure assumes that "issues tried by

right of jury" will be litigated in Bankruptcy Court. The use of Rule 9015, a post-*Marathon* procedural rule as justification, by many courts, for the grant of a substantive right has raised considerable problems. Because of these problems, R9015 will be abrogated under the pending rules amendments. Barring any revisionary action by Congress, the rules amendments will take effect on August 1, 1987. The commentary regarding the abrogation of R9015 leaves the determination of jury trial rights to the courts and suggests that where that right is established, a local rule 9015 can be adopted. *See* Proposed Rule Amendment, R9015, Committee Note.

Treating Core matters such as preference actions as purely equitable, moreover, is quite consistent with the policy behind the Code. Bankruptcy proceedings are Congressionally structured to be decided quickly, efficiently and fairly. Jury trials in these Core matters add a level of expense and delay that is inimical to the Trustee's essentially equitable duty to assemble, account for and apportion the estate.

Thus, it seems clear that there are very persuasive arguments against the right to jury trials, if not in all Core matters, then in *all* preference and at least some fraudulent conveyance actions, (and not merely those which arise out of pure *Katchen* facts). However, as the present case, is a pure, fact driven *Katchen* case, these questions need not be specifically determined in order to strike the jury demand herein.

indicated a willingness to have the Bankruptcy Court determine the validity and amount of that claim.") These issues, therefore, lie within the court's equitable authority to oversee the claims resolution process.

In conclusion, whether the jurisdiction of the bankruptcy court under § 157(b) is solely equitable, or both legal and equitable, a party who has made a claim against the debtor's estate, *has* submitted to the equitable claims resolution process of the bankruptcy court and the nature of the Trustee's defensive action is indeed one of equity.

In the instant proceeding, no question of a right to jury arises. Fidelity's position is exactly that of the creditor in *Katchen.* Fidelity filed its claim to seek the benefit of equitable distribution of estate assets. Even if we were to assume that a core preference proceeding under § 157(b)(2) is a legal one, the legal nature of the action has been converted to one of equity by virtue of the claimant's equitable claim on the Honeycomb estate. Fidelity thereby has subjected itself to the court's equitable jurisdiction over the resolution of disputed claims between the Debtor and itself.

Accordingly, the motion to strike Fidelity's request for a jury trial is granted.

It is SO ORDERED.