**In re COATED SALES, INC., Debtors.**

**COATED SALES, INC., Plaintiff,**

v.

**FIRST EASTERN BANK, N.A., Defendant.**

**Bankruptcy Nos. 88–B–11331 (CB) to 88–B–11336 (CB). Adv. No. 88–5915A.**

United States Bankruptcy Court, S.D. New York.

Oct. 11, 1990.

Kaye, Scholer, Fierman, Hays & Handler by Lester Kirshenbaum, New York City, for Coated Sales, Inc.

Ruffa & Riso, P.C. by Gerard A. Riso, Harvey Lebowitz, New York City, for Michael Weinstein.

Paul, Weiss, Rifkind, Wharton & Garrison by Robert S. Smith, Karen A. Breslow, New York City, for First Eastern Bank, N.A.

Hellring Lindeman Goldstein & Siegel by Rachel N. Davidson, New York City, for Ernest Glantz.

Otterbourg, Steindler, Houston & Rosen, P.C. by Steven B. Soll, New York City, for Creditors Committee.

Greenberg Margolis by Kenneth J. Isaacson, Rosaland, N.J., for Richard Bober.

## DECISION ON FIRST EASTERN BANK'S DEMAND FOR A JURY TRIAL ON COATED SALES, INC.'S PREFERENCE ACTION

CORNELIUS BLACKSHEAR, Bankruptcy Judge.

## I. FACTS

On or about October 23, 1987, Coated Sales, Inc. ("CSI") borrowed $5,000,000 from First Eastern (the "First Eastern Term Loan"), pursuant to a 1–year unsecured term loan agreement. The First Eastern Term Loan was evidenced by a demand note, dated as of the same day. The First Eastern Term Loan remained outstanding and unpaid until April 4, 1988. On or about April 12, 1988, Coated Sales prepaid in full the First Eastern Term Loan by transferring the sum of $5,015,347.22 to First Eastern (the "Repayment").

On November 16, 1988, Coated Sales filed a Complaint in this Court, alleging that, *inter alia*, the Repayment made by Coated Sales (i) was made on account of an antecedent debt owed to First Eastern; (ii) was made while Coated Sales was insolvent; (iii) was made within 90 days before the Filing Date; and (iv) enabled First Eastern to receive more than it would have received if the Repayment had not been made and had First Eastern received payment of such debt to the extent permitted by the provisions of the Bankruptcy Code. Coated Sales further alleged that by reason of the foregoing, the Repayment to First Eastern on account of the First Eastern Term Loan constituted a voidable preference pursuant to § 547 of the Bankruptcy Code and, therefore, was recoverable by Coated Sales pursuant to §§ 547 and 550 of the Bankruptcy Code.

On January 6, 1989, First Eastern filed its Answer with affirmative defenses to the Complaint and demanded a trial by jury. Thereafter, on March 1, 1989, First Eastern filed three Proofs of Claim in these chapter 11 cases.

In its first proof of claim, First Eastern has asserted an unsecured claim of $151,575 against Pacstar Corporation, Inc., a debtor/subsidiary of Coated Sales, based upon a demand note annexed to that Proof of Claim. First Eastern's second Proof of Claim asserts an unsecured claim against Coated Sales in the amount of $151,575, based upon Coated Sales' purported guaranty of First Eastern's loans to Pacstar. First Eastern's third Proof of Claim asserts a contingent, secured claim to the extent First Eastern is entitled to "subrogation, indemnity and reimbursement" from Coated Sales on account of sums which First Eastern might pay to BancBoston Financial Company ("BancBoston"), with respect to BancBoston's claims against First Eastern for the recovery of some or all of the funds advanced by BancBoston to Coated Sales in April 1988 used to make the Repayment. The third Proof of Claim also asserts an unsecured, non-priority and unliquidated claim to the extent of Coated Sales' recovery from First Eastern in this Adversary Proceeding.

On August 7, 1990, Coated Sales filed its Objection and Motion to Expunge First Eastern's Proofs of Claim and asserted as its principal defense thereto the voidable preference received by First Eastern on or about April 12, 1988. Thus, the same claims being asserted affirmatively by

Coated Sales in this Adversary Proceeding are asserted by Coated Sales defensively in its objection to First Eastern's claims.

## II. THE LAW ACCORDING TO GRANFINANCIERA

The Supreme Court in *Granfinanciera, S.A. v. Nordberg,* — U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), determined that a defendant in an adversary proceeding arising in a bankruptcy case may be entitled to a jury trial even though the underlying action is considered a "core" matter under 28 U.S.C. § 157. In holding that the classification of an action as "core" was not dispositive of the right to a jury trial, the Court laid out a three-prong test to determine the issue. The Court focused on whether the action would have been at law or equity in eighteenth century England, and whether the remedy sought was equitable or legal in nature.[1] *Granfinanciera,* 109 S.Ct. 2782. The third prong of the test sought to determine whether public or private rights were in issue; if public rights were implicated, the Seventh Amendment would not apply. *Id.* at 2795. In discussing the third prong, the Court read its previous cases, *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) and *Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932), as concluding that when an issue "arises as part of the process of allowance and disallowance of claims, it is triable in equity." *Granfinanciera* 109 S.Ct. at 2799. The implication drawn is that the

bankruptcy claims process involves the determination of public rights. *See In re Light Foundry Assoc.,* 112 B.R. 134 (Bankr.E.D.Pa.1990). The Court strongly affirmed this view by holding that since the petitioners in *Granfinanciera* had not filed claims against the estate, the trustee's fraudulent conveyance action did not arise "as part of the process of allowance and disallowance of claims" and, therefore, petitioner could not be divested of its right to a jury trial. *Granfinanciera,* 109 S.Ct. at 2799. Thus, the Court concludes that a defendant's right to a jury trial on a bankruptcy trustee's preference (or fraudulent transfer) claim depends upon whether the creditor has submitted a claim against the estate.[2] *Id.*

### A. Synopsis

As *Granfinanciera* makes clear, by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims. Concomitantly, when the claimant invokes the equitable jurisdiction of the bankruptcy court to establish its right to participate in distribution, it cannot, thereafter, object to the court's necessary determination of any misappropriations by the claimant.[3] *See Katchen,* 382 U.S. at 336, 86 S.Ct. at 476. This is true even though the debtor's claim may be legal in nature, and the Seventh Amendment might have entitled the creditor to a jury trial had it not submitted claims

---

**1.** The Court determined that an action to recover a fraudulent transfer (as well as a preference) *is an action at law,* even though it is a core proceeding under 28 U.S.C. § 157(b)(2)(H), and a bankruptcy judge may enter a final judgement in such actions. *Granfinanciera,* 109 S.Ct. at 2794.

**2.** In a footnote, the *Granfinanciera* Court pointed out that its reaffirmation of *Katchen's* holding, that a creditor who files claims against the estate is not entitled to a jury trial, is not based upon the concept of waiver "because creditors lack an alternative forum to the bankruptcy court." Rather, it is based upon the view that the claims process involves the determination of public rights, for which Congress has determined there is no jury trial right. Therefore, filing a claim has a preclusive effect on a party's right to a jury trial, as distinguished from a

waiver of that right. *See In re Light Foundry Associates,* 112 B.R. 134, 137 (Bankr. E.D.Pa. 1990).

Thus, in the case presently before this court, First Eastern, by filing proofs of claim, has precluded any right to a jury trial it may have had, rather than having waived that right.

However, given the factual dissimilarities presented in this case, *see infra* at 455, the term "waiver" might more correctly characterize First Eastern's predicament.

**3.** By filing a claim against the bankruptcy estate, the defendant makes an "'equitable claim to a pro rata share of the res' which cannot be determined until the issues of preference are resolved." *In the Matter of Honeycomb,* 72 B.R. 371, 377 (Bankr.S.D.N.Y.1987), *citing Katchen,* 382 U.S. at 336, 86 S.Ct. at 476.

against the estate.[4] *Granfinanciera*, 109 S.Ct. at 2799, n. 14.

## III. FIRST EASTERN'S ARGUMENT: DISCUSSION

 First Eastern argues that both the predecessors and progeny of *Granfinanciera* are factually distinguishable from the case at hand and, therefore, the law's application to First Eastern should have a different result. It is First Eastern's contention that since CSI commenced the adversary proceeding before the defendant filed any proofs of claim, that the defendant has not "waived" its right to a jury trial. First Eastern points out that in the vast majority of cases that discuss whether a party has submitted to the equitable jurisdiction of the bankruptcy court (and, thus, "waived" or "precluded" its right to a jury trial) the claimant had filed its proof of claim (or other claim) against the bankrupt estate before the estate had brought an adversary proceeding against that claimant (direct action or counterclaim). The defendant is correct that the present case is factually distinct in a chronological sense, however, the case law decisions have not focused on the timing of events in determining that the filing of a claim subjects the claimant to the equitable jurisdiction of the bankruptcy court. *Katchen*, itself, in its determination that it

made no difference if the trustee was seeking affirmative relief via preference, or was merely objecting to the claim on that basis, can be read to intimate that the chronology of events is not dispositive.[5] *See Katchen*, 382 U.S. at 334, 337–38, 86 S.Ct. at 475, 476–77. Similarly, Judge Lifland in *In the Matter of Honeycomb, Inc.*, 72 B.R. 371 (Bankr.S.D.N.Y.1987), posited that the order of filing a claim and commencement of an adversary proceeding is not determinative. "[E]ven should it be true that preference defendants retain a right to a jury trial on non-*Katchen* or *Schoenthal* facts (i.e., the Trustee asserts the preference offensively [as in the present case]), when the preference defendant has filed a claim against the debtor's estate, the rationale of *Katchen* still holds." *Honeycomb*, 72 B.R. at 377. These examples make clear that which party acts first, in other words, the chronology of events, is not determinative of the issue of submission to equitable jurisdiction.

### A. Factors Courts Have Looked To

 Instead, when faced with a demand for a jury trial, courts have looked at various factors, including whether the estate's cause of action: (1) is legal or equitable in nature;[6] (2) arises under plenary or summary jurisdiction;[7] (3) is core or

**4.** Although the Court in *Granfinanciera* determined that an action to recover a preference is legal, rather than equitable in nature, it did not discuss the fact that preference actions do not exist outside of bankruptcy law. Unlike fraudulent transfer law, there is no right at common law for a debtor or creditor to recover a preference. *See In the Matter of Reda, Inc.*, 60 B.R. 178, 180 (Bankr.N.D.Ill.1986). Instead, at common law, a creditor had a right to prefer any creditor it chose. The focus of fraudulent conveyance law is on the intent of the debtor-transferor, whereas the focus of the bankruptcy preference is on equitable distribution to creditors. *See Good Faith and Fraudulent Conveyances*, 97 Harv.L.Rev. 495 (1983). It is only in bankruptcy that preferences are recoverable; the preference is a creature of bankruptcy.

**5.** In *Katchen*, the Court's discussion was primarily directed at a creditor's jury trial rights where the preference issue was raised as a shield in defense to the creditor's claim against the estate. However, the opinion makes clear that use of the preference issue as a sword to seek affirma-

tive relief does not alter the analysis. *See* Warner, *Katchen Up In Bankruptcy*, 63 Am.Bankr. L.J. 1, 28 (1989).

**6.** A preference action was traditionally considered an action at law to which a right to jury trial attached, *Granfinanciera*, 109 S.Ct. at 2791–94, *citing Schoenthal*, 287 U.S. 92, 94, 53 S.Ct. 50, 51 (1932), especially if the suit was to recover a definite sum of money. *But see Honeycomb*, 72 B.R. 371; *In re T.R. Paris & Family, Inc.*, 89 B.R. 760, 766 (Bankr.S.D.Ill.1988); *In re Southern Indus. Banking Corp.*, 70 B.R. 196 (E.D.Tenn.1986), stating that a preference action is equitable in nature. *See also, Katchen*, 382 U.S. at 338, 86 S.Ct. at 477, which states that it is *both* legal and equitable.

**7.** Although *Granfinanciera* spoke in these terms in tracing the history of fraudulent conveyance and preference actions, the former distinction which was for purposes of determining a jury trial right between summary proceedings (no jury right) and plenary proceedings (jury right) is inapplicable because the Code abolished these

non-core;[8] (4) involves public or private rights;[9] and, (5) if the issue arises as part of the process of allowance and disallowance of claims.[10]

█ However, with regard to the present case, *Granfinanciera* seemingly moots the aforementioned inquiries by the negative implication of its statement that the petitioner who had not submitted a claim against the bankruptcy estate has a right to a jury trial. *Granfinanciera*, 109 S.Ct. at 2789–94. The *Granfinanciera* Court affirmed its holdings in *Schoenthal* and *Katchen:*

> Because petitioners here, like the petitioner in *Schoenthal*, have not filed claims against the estate, respondent's fraudulent conveyance action does not arise "as part of the process of allowance and disallowance of claims." Nor is the action integral to the restructuring of debtor-creditor relations. Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury. *Katchen* thus supports the result we reach today; it certainly does not compel its opposite.

*Granfinanciera*, 109 S.Ct. at 2799.

Thus, *Granfinanciera* can be interpreted as narrowing the factors in the present case to: (i) whether defendant has filed a claim against the bankruptcy estate; and concordantly, (ii) whether this causes the underlying action to arise as part of the "process of allowance and disallowance of claims."

### B. The "Process Of Allowance And Disallowance"

█ Since First Eastern has filed Proofs of Claim in this case, it is only necessary for this Court to focus on the "process of allowance and disallowance of claims" issue.

Defendant argues that the chronology of events in this case would dictate that the preference action and the response thereto does not fall within the "process of allowance and disallowance" rubric, and that the filing of Proofs of Claim by defendant, in and of itself, would not have brought the action within the ambit of claims allowance, but for the plaintiff's objection to those claims.[11] However, defendant, by filing three Proofs of Claim in the present case, has invoked this Court's jurisdiction with regard to any matters affecting the disposition of those claims. This Court, pursuant to § 502 of the Bankruptcy Code, is expressly granted power to allow, disallow and reconsider claims, which is of basic importance to the administration of a bankruptcy estate.[12] 11 U.S.C. § 502; *see Katchen*, 382 U.S. at 329, 86 S.Ct. at 472. Further, in determining allowance or disallowance, under § 502(d) the court will take into consideration whether the claimant has received a preferential payment.

concepts as grounds for jurisdiction. *See In the Matter of Reda, Inc.*, 60 B.R. 178, 180 (Bankr.N.D.Ill.1986). The Supreme Court has tended to analyze this dichotomy with regard to the Seventh Amendment right to a jury trial by distinguishing between legal claims, which seek money damages, and equitable claims, which seek the exercise of a court's equitable jurisdiction.

8. A preference action is a core proceeding pursuant to § 157(b)(2)(F). Some courts have refused the request for a jury trial solely on this basis. *See In re Kroh Brothers*, 91 B.R. 889, 892 (Bankr. W.D.Mo.1988). However, *Granfinanciera* holds that the core/non-core distinction is not dispositive of the jury trial issue.

9. *See Granfinanciera*, 109 S.Ct. 2782. Congress may block application of the Seventh Amendment right to a jury trial in cases where "public rights" are litigated. *Id.*

10. *See Granfinanciera*, 109 S.Ct. 2782; *Katchen*, 382 U.S. 323, 86 S.Ct. 467, and, *Schoenthal*, 287 U.S. 92, 53 S.Ct. 50.

11. Defendant argues that CSI objected merely to "manufacture" an appearance of the "process of allowance and disallowance." Defendant's Memorandum of Law at 5, Coated Sales, Inc., v. First Eastern Bank, N.A. However, the debtor had not filed objections to many claims at the time of the objection to those of First Eastern, and is still in the process of filing objections to claims. *See* Kirshenbaum Affidavit, ¶ 5, September 7, 1990. Therefore, defendant's objection on this basis is not supported.

12. For example, a claim that is not objected to is deemed allowed under § 502(a).

Accordingly, the claimant has not only invoked this Court's jurisdiction with regard to the claims filed, but with regard to the preference action as well. The preference issue entails the claims allowance process because the creditor's receipt of a preference is a defense to the allowance of a claim under § 502(d) of the code.[13] Therefore, it necessarily becomes involved in the "process of allowance and disallowance of claims." See Granfinanciera, 109 S.Ct. at 2799. And, having voluntarily invoked the summary jurisdiction of this Court, the claimant cannot thereafter limit the exercise of that jurisdiction over the subject matter by objection thereto. In re I.J. Knight Realty Corp., 298 F.Supp. 160, 161 (E.D.Pa.1969).

■■■ Further, defendant is not in the sympathetic position of having only filed a proof of claim in defense to the preference action as a protection against the funds it may have to disgorge.[14] Defendant has instead used the claims process in a truly affirmative fashion, by filing 2½ claims wholly unrelated to the preference action. Ironically, it is necessary that the bankruptcy court determine the preference issue first, in order to establish the size of the res and the availability of funds to pay off those claims, as well as the possibility of setoffs.

Additionally, it would make no sense to have the bankruptcy court decide the preference issue for purposes of claims allowance, and then have the Court decide the same issue in a jury trial. Putting aside the legal reality of the likelihood of the application of res judicata or collateral estoppel, it would be economically infeasible to have the estate expend monies litigating issues already decided. As stated in Katchen, "to require the trustee to commence a plenary action in such circumstances would be a meaningless gesture, and it is well within the equitable powers of the bankruptcy court to order return of the preference during the summary proceedings on allowance and disallowance of claims." Katchen, 382 U.S. at 334–35, 86 S.Ct. at 475–76. To sanction such a scenario would be clearly adverse to the basic tenets of bankruptcy, i.e., preserving the estate in order to maximize the availability of funds for creditors.

### c. The Tenth Circuit Cases

The Court in Granfinanciera was abundantly clear in stating that had petitioners in that case filed claims against the estate, they would have lost their right to a jury trial. Granfinanciera, 109 S.Ct. at 2799. Granfinanciera did not focus on timing of events in reaching this conclusion.

However, defendant relies on two cases from the Tenth Circuit to buttress its argument that chronology may be dispositive on the issue of submission to equitable jurisdiction. See In re Republic Trust & Savings, 897 F.2d 1041 (10th Cir.1990), rehearing denied (April 10, 1990), Petition for Certiorari Filed (July 9, 1990) (No. 90–93); In re Kaiser Steel Corp., 911 F.2d 380 (10th Cir.1990). However, a close look at these cases demonstrates that their reasoning is not clear, or at least, inapposite to the present case.

In Republic Trust, the Tenth Circuit Court of Appeals upheld certain appellants' right to a jury trial even though they had filed claims against the estate.[15] The circuit court held that the trustee's actions to avoid the preferential transfers "were plenary rather than a part of the bankruptcy court's summary proceedings involving the 'process of allowance and disallowance of claims.'" Republic, 897 F.2d at 1047. The Court of Appeals' reasoning was not clear,

---

**13.** Previously contained under § 57(g) of the Act. See Warner, Katchen Up In Bankruptcy, 63 Am.Bankr.L.J. at 27, n. 206.

**14.** It was not necessary for the defendant to file a claim for the amount it may have to disgorge before the bar date. Section 502(h) allows a claim arising from the recovery of property under § 550 to be treated as if it had arisen before the date of filing. 11 U.S.C. § 502(h).

**15.** First Eastern mischaracterizes the facts here; the proofs of claim were filed before the adversary proceeding was commenced, not vise-versa. See Abelow Affidavit, September 7, 1990.

although the court stated that its decision was consistent with *Granfinanciera* and *Katchen*.[16] In a footnote, the circuit court stated that the claims of those who had filed were disallowed pursuant to § 502(d) (for purposes of voting on the plans) because they had not returned the alleged preferential transfers. *Id.* at 1045, n. 3. The *Republic* court went on to say that the appellants had no present claim against the estate, and would only have a claim against the estate if the trustee prevailed on the preference action. *Id.* at 1046.

This Court can only surmise as to the Tenth Circuit's reasoning on this point: Is it that the appellants really had no present, valid claims against the estate (according to the court) and therefore, the preference issue did not fall within the ambit of the "process of allowance and disallowance of claims?" If this is the case, with due respect to the Tenth Circuit, it is not manifestly clear to this Court. Or, is the reasoning that since the debtor commenced the adversary proceeding before objecting to the creditor's claim, that the action remains "plenary" and does not fall within the scope of the "process of allowance and disallowance of claims?" If this is the rationale, it remains abstruse to this Court. The filing of a claim and the existence of the preference action necessarily involves the claims allowance process. *See* section III.B., *supra*.

As for the *Kaiser Steel* case, it fails First Eastern as well. There, the Tenth Circuit Court of Appeals relied on its earlier holding in *Republic Trust* in reversing the district court and, thus, is unclear to this Court as well.[17]

## IV. CONCLUSION

Finally, by submitting claims against the estate, First Eastern has subjected itself to the bankruptcy court's equitable power to disallow those claims. Important to this process is the determination of the preference action. Whether the trustee commenced the preference action before or after the creditor filed its proof of claim should not be dispositive of the right to a jury trial. If that were the case, the chronology of these events could easily be manipulated by the parties and the case law circumvented or rendered meaningless. This clearly cannot be the intention of the case law. Therefore, whether a creditor once had the right to a jury trial and subsequently relinquished it by filing a Proof of Claim, or whether the party forfeited that right at the outset by filing a proof of claim in advance of making the jury demand is a distinction without meaning. The salient issue is whether a Proof of Claim has been filed.

---

**16.** "Although some of the appellants did file claims against the estates because they continued to have monies invested in the debtors at the time of the bankruptcy, ... we believe they likewise are entitled to a jury trial under the rationale of *Granfinanciera* and *Katchen*." *Republic Trust,* 897 F.2d at 1046.

The trustee in *Republic Trust* argues in his petition for certiorari that the Tenth Circuit clearly violated *Granfinanciera*. "The Tenth Circuit, in fixing upon the 'plenary' versus 'summary' nature of a preference proceeding, missed a central mark of *Granfinanciera*, according to the trustee. '[T]he creditor's filed claim and the ensuing preference action by the trustee become [sic] integral to the restructuring of the debtor-creditor relationship through the bankruptcy courts equity jurisdiction.'" 2 Bankr.L.Rep. (BNA) No. 33 at 809 (August 23, 1990).

**17.** However, the district court in *Kaiser Steel,* although affirming the bankruptcy court's decision striking the jury demands of creditors, did

so reluctantly, and suggested an immediate appeal of its own order. The district court expressed that most of the cases relied on by the bankruptcy court were of the general belief that there was no right to a jury trial in core matters. *Kaiser,* 109 B.R. 968, 976 (D.Colo.1989); *citing Interconnect Telephone Services v. Farren,* 59 B.R. 397 (S.D.N.Y.1986); *Honeycomb,* 72 B.R. 371; *In re Kroh Bros.,* 91 B.R. 889. The district court further pointed out that these cases were decided before *Granfinanciera,* which held that if the issue was legal in nature, even if it was core, there was a right to a jury trial if the party had not otherwise submitted to the equitable jurisdiction of the bankruptcy court. Thus, the district court stated that the bankruptcy court's analysis was not well reasoned.

However, that does not affect the issue of submission to equitable jurisdiction in our case, in which the analysis of the foregoing cases was not affected by *Granfinanciera.* Rather, *Granfinanciera* only establishes that jury trials are permissible in core matters.

Accordingly, CSI's motion to strike the jury trial demand of First Eastern is granted.