In The Matter of O'SULLIVAN'S FUEL OIL CO., INC., Debtor.

Thomas M. GERMAIN, Trustee for the Estate of O'Sullivan's Fuel Oil Co., Inc., Plaintiff,

v.

CONNECTICUT NATIONAL BANK, Defendant.

Bankruptcy No. 2–84–00038.
Adv. No. 2–87–0078.

United States Bankruptcy Court, D. Connecticut.

Sept. 6, 1989.

---

Thomas M. Germain, Hartford, Conn., for plaintiff.

Janet C. Hall, Robert A. Izard, Jr. and Eric Brunstad, Robinson & Cole, Hartford, Conn., for defendant.

### RULING ON DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S REQUEST FOR TRIAL BY JURY

ROBERT L. KRECHEVSKY, Chief Judge.

#### I.

The question presented is whether a bankruptcy trustee has a right to a jury trial in an adversary proceeding he commenced in state court to recover monetary damages for torts and contract violations allegedly committed by the defendant postpetition. The issue has been raised by way of the defendant's motion to strike the trustee's request for trial by jury.

#### II.

The debtor in this case, O'Sullivan's Fuel Oil Co., Inc., filed a chapter 11 petition on January 18, 1984. The case was converted to one under chapter 7 on July 30, 1986, and the plaintiff, Thomas M. Germain, became trustee of the debtor's estate. On or about June 1, 1987, the trustee brought suit against Connecticut National Bank (CNB) in the Connecticut Superior Court claiming that CNB is liable to the estate for willful interference with the debtor's business (count 1), collusion and duress (count 2), fraudulent misrepresentation (count 3), violation of the Racketeer Influ-

enced and Corrupt Organizations Act (count 4), breach of obligation to act in good faith (count 5), and violation of the Connecticut Unfair Trade Practices Act (count 6). The complaint alleged the following factual underpinnings to support a claim for money damages.

The debtor had been in the business of selling fuel oil to retail accounts. During 1981, the debtor borrowed $500,000.00 from First Bank, a bank with whom CNB merged in March 1984. First Bank received a mortgage lien on the debtor's fuel oil storage facility as security for the loan. Starting in November 1983, approximately two months prior to the filing of the debtor's bankruptcy petition, First Bank undertook to exercise control of the debtor in order to serve First Bank's own interests. First Bank demanded that one James Tisdale be placed in control of the debtor's business and recommended that the debtor file a chapter 11 petition utilizing a law firm selected by the bank. After the filing of the petition, First Bank or CNB required the debtor to replace its insurance agency; insisted that Tisdale and his brother, Charles Tisdale, remain in control of the debtor's business when the Tisdales had no competence to operate the business and wasted its assets; resisted shareholder efforts to oust the Tisdales by threatening to terminate financing and to force the business to close; encouraged the organization of a successor corporation by the Tisdales to take over the debtor's assets; and misused court-approved financing to satisfy its prepetition debt. These actions persisted until August 24, 1984, when the Tisdales relinquished control of the debtor.

CNB removed the trustee's action from the state court to the bankruptcy court on July 15, 1987. *See* 28 U.S.C. § 1452, Bankr.R. 9027. After CNB answered the complaint, the trustee timely filed his request for a jury trial.

On October 2, 1987, the trustee moved the district court to withdraw the reference of the adversary proceeding. The motion was based, in part, on the trustee's jury-trial claim. The district court, on February 17, 1988, issued a memorandum requesting

the bankruptcy court to make a recommendation on the issue of whether the proceeding is a core proceeding. The significance of a determination of whether a proceeding is a core proceeding is that the bankruptcy judge may enter final orders or judgments in a core proceeding. 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title. . . ."). In proceedings that are non-core, the bankruptcy judge may only enter proposed findings of fact and conclusions of law to be submitted to the district court for entry of a final order or judgment. 28 U.S.C. § 157(c)(1). In a separate ruling, the district court, on CNB's motion, dismissed the trustee's RICO count.

The bankruptcy court, on June 30, 1988, submitted a report recommending that the proceeding is a core proceeding because it arose, for the most part, in a case under title 11. The district court adopted this recommendation and then denied the trustee's motion to withdraw the reference, without comment on the trustee's right to a jury trial. 88 B.R. 17.

CNB filed its motion to strike the trustee's jury demand on November 2, 1988, contending that the trustee has neither a statutory nor Seventh Amendment[1] right to a jury trial in a core proceeding, and that the bankruptcy court has no authority to conduct a jury trial.

The trustee agreed with CNB that the bankruptcy court lacks authority to conduct a jury trial, but asserted his right to a jury trial under the Seventh Amendment, despite the core designation, relying primarily on the Supreme Court's analysis and commentary in *Granfinanciera v. Nord-*

*berg,* 492 U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

### III.

#### A.

*Granfinanciera* holds that a creditor, who has not filed a proof of claim, has a right to a jury trial in a lawsuit brought by a bankruptcy trustee to recover funds allegedly transferred fraudulently. The Supreme Court, finding that at common law a fraudulent conveyance action entitled the parties to a jury trial, ruled that Congress, in designating fraudulent conveyance actions as core proceedings,[2] could not affect a defendant's right under the Seventh Amendment to a jury trial. For like reasons, the Court added, neither could Congress deny a party's right to have such actions heard and determined by an Article III tribunal.

The trustee contends that this court's previous designation of his proceeding as core[3] under *Granfinanciera* decides nothing insofar as his right to a jury trial is concerned. He argues that under the Seventh Amendment analysis rearticulated in *Granfinanciera* he has a clear right to a jury trial and that the exception for suits involving "public rights"[4] is not applicable.

CNB distinguishes *Granfinanciera* in that CNB filed a proof of claim in this case thereby barring CNB from asking for a jury trial. CNB contends that a trustee who succeeds a debtor who has filed a voluntary petition in the bankruptcy court cannot be entitled to greater jury-trial rights than a creditor who files a proof of claim. *CNB's Supplemental Memorandum* at 10–11. In effect, CNB's argument is that a chapter 7 trustee of an estate commenced by a voluntary petition never

---

1. The Seventh Amendment provides:
   In suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.

2. 28 U.S.C. § 157(b)(2) lists matters which are core proceedings and includes:

(H) proceedings to determine, avoid, or recover fraudulent conveyances.

3. The *Granfinanciera* ruling has significantly undercut the court's prior recommendation that the present proceeding is core.

4. *See* Part III B *infra*.

has a right to a jury trial even if the trustee did not invoke the jurisdiction of the bankruptcy court when he commenced his action. CNB further asserts that the trustee's action necessarily implicates "the bankruptcy process itself," because the complained of actions occurred in the bankruptcy court, thereby bringing into play the public rights exception. *Id.* at 12–19.

### B.

*Granfinanciera* makes applicable to the bankruptcy court the Supreme Court's familiar two-part test to determine a party's Seventh Amendment right to a jury trial and then adds a third element. Under this analysis, the initial step is to find whether a party's cause of action is one that could be tried before a court of law and, therefore, to a jury in England in 1791, and next, to determine whether the remedy sought is legal in nature. If it is concluded that both aspects of this test are met, the final step is to decide whether "Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." *Granfinanciera,* 492 U.S. at ——, 109 S.Ct. at 2790 (footnote omitted). In this aspect of the analysis, if the claim asserts a "public right," Congress may deny the parties a jury trial without violating the Seventh Amendment. If the rights involved are "private" in nature, the Seventh Amendment protects the litigants' right to a jury trial. "Private rights" are defined "as the liability of one individual to another under the law as defined." *Id.* at ——, fn. 8, 109 S.Ct. at 2795, fn. 8. (citations omitted). "Public rights" are "statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administration agency or specialized court of equity." *Id.* at ——, fn. 10, 109 S.Ct. at 2797, fn. 10.

### C.

Under the foregoing reading of *Granfinanciera,* I conclude the trustee is entitled to have the estate's cause of action tried to a jury. His complaint, bottomed on allegations of tort and contract violation, seeks money damages and presents a legal claim triable before a jury. The trustee's suit is not based on any congressionally-created right that is "an integral part of a public regulatory scheme." "Wholly private tort, contract and property cases ... are not at all implicated [by the public rights doctrine]." *Id.* at ——, 109 S.Ct. at 2795. Undoubtedly, requests for a jury trial by a bankruptcy trustee will be rare, but there is no hint in *Granfinanciera* that a bankruptcy trustee, *per se,* is ineligible to seek a trial by jury where he did not voluntarily submit the estate's claim to the jurisdiction of the bankruptcy court for resolution. "[S]tate-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate ... [are] matters of private rather than public rights." *Id.* at ——, 109 S.Ct. at 2798.

In short, I perceive no logical basis for denying a plaintiff bankruptcy trustee the same right to claim a jury trial otherwise available to a defendant in the litigation.

### IV.

Both parties agree that the bankruptcy court has no authority to conduct a jury trial so that that issue, expressly left undecided by *Granfinanciera,* is not before me for a ruling.

### V.

For the reasons stated, CNB's motion to strike the jury claim is denied. The parties are directed to take appropriate steps to remove the proceeding from the bankruptcy court.