**In re KAISER STEEL CORP., et al., Debtor.**

**KAISER STEEL CORP., et al., Plaintiffs,**

v.

**Joseph A. FRATES, et al., Defendants.**

**KAISER STEEL CORP., et al., Plaintiffs,**

v.

**Monty RIAL, et al., Defendants.**

Civ. A. No. 88–K–1379.
Bankruptcy No. 87 B 1552E.

United States District Court,
D. Colorado.

Dec. 15, 1989.

H. Thomas Coghill, David J. Richman, Coghill & Goodspeed, Denver, Colo., James P. McCarthy, Lindquist & Vennum, Minneapolis, Minn., for Kaiser Steel Corp.

Theresa J. Collier, Holland & Hart, Denver, Colo., Robert J. Morrow, White & Case, New York City, for Clifford V. Brokaw, III.

Robert E. Darby, Reavis & McGrath, Los Angeles, Cal., and Ronald G. Rossi, Rossi & Judd, Denver, Colo., for William R. Gould and Howard P. Allen.

William D. Treeby, Barry W. Ashe, New Orleans, La., and William H. Haring, Bostrom, Haring & Hitt, Denver, Colo., for Lloyd G. Hansen.

Douglas M. Schwab, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Darrell Waas, Otten, Johnson, Robinson, Ness & Ragonetti, Denver, Colo., for Richard N. Gary and Stephen A. Girard.

Frank S. Mosley, Davis, Polk & Wardwell, New York City, Jerome G. Snider, Davis, Polk & Wardwell, Washington, D.C., and Douglas M. Tisdale, Brownstein, Hyatt, Farber & Madden, Denver, Colo., for Donaldson, Lufkin & Jenrette.

William G. Imig, Ireland, Stapleton, Pryor & Pascoe, Denver, Colo., Todd E. Gordiner, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for Dean Witter.

Alan L. Bugg, Colorado Springs, Colo., for Calder & Co., et al., and Perma Pacific Properties.

Richard P. Slivka, David L. Dain, Vinton, Slivka & Panasci, Denver, Colo., for Charles S. McNeil, Monty H. Rial and Perma–Frates Joint Venture.

Paul F. Hultin, Parcel, Mauro, Hultin & Spaanstra, Denver, Colo., for Joseph A. Frates, Charles S. Holmes, Robert E. Merrick & Stan P. Doyle and Perma–Frates Joint Venture.

John D. Phillips, Hall & Evans, Denver, Colo., Morton G. Rosen, Steven L. Hoch, Gregory J. Khougaz, Santa Monica, Cal., for Charles H. Black.

I. Thomas Bieging, Morrato, Bieging, Burris & Colantuno, Englewood, Colo., for Miles B. Yeagley.

Harden Holmes, Holmes & Starr, Denver, Colo., Arnold Jacobs, Glenn Siegel, Shea & Gould, New York City, for Touche Ross Co.

Julia T. Waggener, Denver, Colo.

Jeffrey L. Beattie, Denver, Colo.

Thomas English, English, Jones & Faulkner, Tulsa, Okl.

Joseph N. Mole, Lemle, Kelleher, et al., New Orleans, La.

Joseph Girior, Little Rock, Ark.

J. Michael Morgan, Lohf, Shaiman & Ross, Denver, Colo.

Robert M. Duitch, Duitch & Johnson, Colorado Springs, Colo.

James P. Montague, Rosemead, Cal.

Craig Christensen, Sherman & Howard, Denver, Colo.

Wayne E. Borgeest, Wilson, Elser, Moskowitz, New York City.

Deborah Schier–Rape, Gibson, Dunn & Crutcher, Denver, Colo.

Michael E. Katch, Anderson & Wasserman, Denver, Colo.

Bruce D. Celebrezze, Sedgwick, Detert, et al., San Francisco, Cal.

Jay M. Finesilver, Lisa K. Shimel, Denver, Colo.

Arthur L. Sherwood, Gibson, Dunn & Crutcher, Los Angeles, Cal.

Leon C. Marcus, Booth, Marcus & Pierce, New York City.

Scott R. Schaffer, D'Amato & Lynch, New York City.

Steven H. Frankel, Karen B. Ksander, Sonnenschein, Carlin, et al., Chicago, Ill.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

These consolidated appeals present a difficult issue of first impression: does a defendant have the right to a jury trial in a bankruptcy adversary action when the claims against him are legal in nature and when he has filed a claim against the estate only in response to the adversary action? The defendants in the *Frates*[1] and *Rial*[2] litigation raise this issue, contending that the bankruptcy court erred in striking the jury demands of some defendants and denying other defendants leave to amend their answers to assert jury demands.[3]

1. *Kaiser Steel Corp. v. Frates,* No. 87–E–135 (Bankr.D.Colo. Feb. 26, 1987).

2. *Kaiser Steel Corp. v. Rial,* No. 87–M–437 (Bankr.D.Colo. Jan. 15, 1987).

3. These appeals involve two bankruptcy court orders. In the first order, dated January 16, 1989, 95 B.R. 782, the bankruptcy court granted Kaiser's motion to strike the jury demands of the Frates Group and the Perma–Frates Joint Venture in the *Frates* case, and defendant Yeagley's demand in the *Rial* case. In the second order, dated January 19, 1989, it denied the motion of the Frates Group and defendant Hansen to amend their answers to assert jury demands. On September 25, 1989, the court *sua sponte* issued an order reaffirming its rulings in

They have appealed the bankruptcy court's rulings in three ways: by requesting leave to appeal, by motions to withdraw the reference and by petitions for writ of mandamus. I have consolidated these actions.

Whether a party is entitled to a jury trial in a bankruptcy adversary action has been the subject of much dispute. *See generally*, Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment*, 72 Minn.L.Rev. 967 (1988). In a recent decision, however, the Supreme Court attempted to clarify when a defendant in a bankruptcy adversary action is entitled to a jury trial. The Court held in *Granfinanciera, S.A. v. Nordberg*, — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), that the defendant has the right to a jury trial if the claims against him are legal, rather than equitable, and he has *not* filed a claim against the estate. In so holding, the Court reaffirmed its rationale in an earlier case, *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), wherein the Court held that a party who had filed a claim against the estate was not entitled to a jury trial on the trustee's preference counterclaim because, in filing the claim, the party had subjected himself to the jurisdiction of the bankruptcy court.

Neither *Granfinanciera* nor *Katchen* directly address the situation raised in this case, where the defendants' counterclaims against the estate are defensive and would not have been filed but for Kaiser's adversary action against them. Consequently, I will discuss the factual background leading to this appeal, statutory law, the *Katchen* and *Granfinanciera* decisions and the potential application of these and other cases to this consolidated appeal.

### I. *Factual Background*

This appeal arises out of the *Frates* and *Rial* litigation, adversary actions brought by the reorganized Kaiser based on the 1985 exchange of assets between the controlling groups of Kaiser before its bankruptcy. Before the 1985 exchange, the Frates and Perma Groups held equal interests in the company, although record ownership was in the Frates Group. In the 1985 exchange, the Perma Group acquired the Frates Group's interest in Kaiser. In addition, members of these two groups received compensation in the form of consulting fees, bonuses and commissions under the Transaction Incentive Program, or "TIPS."

In *Frates* (the "Exchange Case"), Kaiser has alleged twelve claims for relief against various defendants. They are for breach of fiduciary duty, negligence, impairment of capital, breach of contract, unjust enrichment, failure of consideration, fraudulent conveyance (under the Code and the Uniform Fraudulent Conveyance Act enacted as California law), and conspiracy and aiding and abetting a fraudulent conveyance. In *Rial* (the "TIPS Case"), Kaiser seeks to recover certain compensation paid to its former directors during the 1985 Exchange. It alleges claims premised on fraudulent conveyance, breach of fiduciary duty, unjust enrichment and conspiracy to commit fraud.[4] In answering these complaints, several defendants asserted jury demands. In addition, many filed counterclaims against Kaiser. Other defendants who had not asserted jury demands then moved to do so. Kaiser responded by moving to strike the jury demands and opposing the motions to amend.

Ruling on these motions, the bankruptcy court considered the defendant's rights to a jury trial by first addressing its jurisdiction. The bankruptcy court concluded "that Congress intended core matters concerning the debtor's estate and the adjustment of the debtor/creditor relationships to be determined in summary proceedings." Thus, it held that the defendants had no right to a jury trial with respect to the core matters asserted in the *Frates* and *Rial* litigation—the claims for relief under

---

light of *Granfinanciera, S.A. v. Nordberg*, — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

**4.** The bankruptcy court's January 16 order contains an exhibit indicating the claims alleged against each defendant, which defendants have requested a jury trial and which defendants have filed claims against the estate in the *Frates* and *Rial* actions.

§§ 541, 542, 544, 547, 548 and 550 of the Code which are based on a fraudulent conveyance theory.

As to the non-core claims, the bankruptcy court correctly noted that, under the post-*Marathon* jurisdictional scheme, it could not enter final judgment on non-core matters, absent the parties' consent. *See* 28 U.S.C. § 157(c)(1). It ruled, however, that a party need not expressly consent, but that consent could be "manifested by a defendant in an otherwise non-core proceeding commenced in the bankruptcy case seeking relief against the debtor or the debtor's estate by the filing of a counterclaim or proof of claim." Order at 14. Thus, it held that the claims for relief based on breach of fiduciary duty, negligence, impairment of capital, breach of contract, unjust enrichment, failure of consideration, conspiracy and aiding and abetting were non-core matters within the meaning of 28 U.S.C. § 157(c), but that the defendants had no right to a jury trial with respect these claims because they had filed counterclaims against the estate.[5]

Finally, the court severed the defendants' cross- and third party claims, finding that they had no effect on Kaiser's estate or the underlying bankruptcy case, and questioning whether it even had jurisdiction over the claims. The court stated that "[t]his [severance] results in the prompt trial of the Plaintiff's claims and preserves to the defendants the right to a jury trial on the indemnification type claims asserted among them and by them against third parties." January 16 Order at 19, 20. In a footnote, the court additionally reasoned that the severance of the defendants' cross- and third party claims "does not impermissibly impair the defendants' right to a jury trial on the legal issues, even though there conceivably may be some *res judicata* effect from this Court's decision on the equitable issues." *Id.* at 20, n. 6 (citing

*Katchen v. Landy*). On September 25, 1989, the bankruptcy court reaffirmed its ruling in response to a rehearing held in light of the then recent decision in *Granfinanciera*.

## II. *The Bankruptcy Code*

Before the comprehensive revision of bankruptcy laws in 1978, it was assumed that the Seventh Amendment did not apply to bankruptcy matters because bankruptcy courts were courts of equity with limited jurisdiction, and under the Seventh Amendment, there was no right to a jury trial in equitable matters. *See* Gibson, *supra* at 971–986. With the enactment of the Bankruptcy Code in 1978, Congress significantly expanded the bankruptcy courts' jurisdiction to include matters encompassed by the Seventh Amendment's guarantee. *Id.* Courts were divided over whether the right to a jury trial attached to bankruptcy matters. The situation became further confused when the Supreme Court invalidated much of the expanded jurisdictional grant to the bankruptcy courts in the *Marathon Oil* decision. *Id.* Congress reacted to this jurisdictional dilemma by enacting the 1984 Amendments to the Bankruptcy Code, and revising its provisions with respect to jury trials.

The Bankruptcy Code currently provides little guidance as to when a party is entitled to a jury trial in bankruptcy matters. As noted by the Supreme Court, "The current statutory provision for jury trials in bankruptcy proceedings—28 U.S.C. § 1411—enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Amendments)—is notoriously ambiguous." *Granfinanciera*, 109 S.Ct. at 2789 n. 3 (citations omitted). Section 1411(a) simply provides that the jurisdictional provisions of Title 28 and the Bankruptcy Code "do not affect any right to trial by jury that an individual has under

---

**5.** Specifically, the court found that (a) defendants Frates, Holmes, Merrick, Doyle, Black, Gould, Allen, Girard, Gary, Hansen, Brokaw and Dean Witter had consented to the bankruptcy court's jurisdiction to hear the non-core claims because each had asserted or attempted to assert counterclaims against the estate, (b) that the Perma Frates Joint Venture had no

right to a jury trial on the core claims asserted against it, and (c) that defendant Yeagley's jury demand in the *Rial* case was not timely asserted. In its September 25 order, the court corrected its ruling with respect to the Perma Frates Joint Venture, noting that the entity had filed a claim against the estate and was therefore not entitled to a jury trial.

applicable non-bankruptcy law with regard to a personal injury or wrongful death tort claim." 28 U.S.C. § 1411(a). Section 1411(b) is similarly unhelpful. It provides only that the district court may order issues arising in connection with involuntary petitions to be tried without a jury. *Id.* § 1411(b).

There has been no satisfactory resolution about the application of § 1411, even with reference to its "confused" legislative history. *See Granfinanciera,* 109 S.Ct. at 2789 n. 3; Gibson, *supra,* at 990–96. Likewise, it appears that § 1480 of the Code, which states that "this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979," has been repealed by Congress' redefinition of the bankruptcy court's jurisdiction by the 1984 Amendments. *Granfinanciera,* 109 S.Ct. at 2789 n. 3. Consequently, the courts and commentators have all but ignored the statutory provisions relating to jury trials, instead resting their analysis of the right to a jury trial in bankruptcy matters on the Seventh Amendment.

### III. *Seventh Amendment Case Law.*

In *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), a case originating in the Tenth Circuit, the Supreme Court considered the scope of the Seventh Amendment as it applies in bankruptcy cases. Katchen was an officer of the debtor corporation. Before its bankruptcy, the corporation borrowed $50,000 from two banks. The corporation delivered two notes to the banks, which Katchen signed as an accommodation maker. Shortly thereafter, the company suffered a serious fire, and Katchen became the trustee of the fund into which the corporation's assets were placed. During his trusteeship, and before the corporation's bankruptcy, Katchen made several payments on the notes from the fund, and, evidently, one payment out of his personal funds. After the bankruptcy, Katchen filed a claim for rent due him, and for the note

payment made with his personal funds. The trustee counterclaimed for recovery of the two payments to the banks made from the trust fund, arguing that they were preferences because of Katchen's status as an accommodation maker. Katchen objected to the bankruptcy court's jurisdiction over the preference counterclaim, and the referee overruled his objection, affirmed judgment for the trustee on the amount of the preference and held that Katchen's claims were to be allowed only when the preference judgment was satisfied. 382 U.S. at 323, 86 S.Ct. at 467. The Tenth Circuit affirmed on appeal.

The Supreme Court granted certiorari in *Katchen* because of a split in the circuits as to the procedure for trying bankruptcy preference actions, particularly regarding the bankruptcy court's jurisdiction to order return of a preference on a transaction unrelated to the underlying claim. In reviewing the bankruptcy court's jurisdiction, the Supreme Court first noted that such courts are essentially courts of equity with the power to "proceed in a summary fashion to deal with the assets of the bankrupt they are administering." *Id.* at 327, 86 S.Ct. at 471. They additionally have the power to determine preference claims. As part of this power, the Court ruled that the bankruptcy court likewise may " 'inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based.' " *Id.* at 329, 86 S.Ct. at 472.

Consequently, when the trustee in *Katchen* filed a preference counterclaim against Katchen, the bankruptcy court had the power to determine both the validity of Katchen's claim against the estate and to order the return of any preference it found as part of this claims determination process, regardless of the fact that had Katchen not filed a claim against the estate, the trustee would have to commence a plenary action in state court in which Katchen could have demanded a jury trial. The court stated:

> [A]lthough petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary

action by the trustee, when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity. The Bankruptcy Act, passed pursuant to the power given to Congress by Art I, § 8, of the Constitution to establish uniform laws on the subject of bankruptcy converts the creditor's legal claim into an equitable claim to a pro rata share of the *res*, a share which can neither be determined nor allowed until the creditor disgorges the alleged voidable preference he has already received. As bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession, and as the proceedings of bankruptcy courts are inherently proceedings in equity, there is no Seventh Amendment right to a jury trial for determination of objections to claims, including § 57g objections.

*Id.* at 336, 86 S.Ct. at 476 (citations omitted). The court rejected the argument that the denial of Katchen's right to a jury trial would violate the rule of *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) and *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), that legal issues must first be tried to a jury, because Congress created "a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury." 382 U.S. at 339, 86 S.Ct. at 478.

Since the ruling in *Katchen*, decided under the 1898 Bankruptcy Act, courts have struggled with its interpretation under current bankruptcy law. In 1989, the Supreme Court finally addressed the current application of *Katchen* in *Granfinanciera, S.A. v. Nordberg*, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). *Granfinanciera* arose out of the bankruptcy of the Chase & Sanborn Corporation. Nordberg, the trustee for Chase & Sanborn's estate, commenced a preference action to recover three transfers made to Granfinanciera and Medex, Ltda (entities later nationalized by the Columbian government). Neither Granfinanciera nor Medex filed claims against the estate. Granfinanciera and Medex answer-

ed the complaint, demanding a jury trial. The bankruptcy court denied the jury demand, and entered judgment for the trustee. The district court and court of appeals affirmed on appeal.

The Supreme Court began its inquiry into the petitioner's right to a jury trial by first examining whether the Seventh Amendment applied to the trustee's preference action. To do so, the Court inquired whether, under common law as it existed in 1791, such an action would have been at law or in equity. 109 S.Ct. at 2790. It concluded, after a detailed review of authority, that an action to recover a preference or a fraudulent conveyance sounded in law, and that, "[u]nless Congress may and has permissibly withdrawn jurisdiction over that action by courts of law and assigned it exclusively to non-Article III tribunals sitting without juries, the Seventh Amendment guarantees petitioners a jury trial upon request." *Id.* at 2794.

Next, the Court addressed the current bankruptcy scheme to determine whether the petitioner's right to a jury trial had been overridden by Congress. First, it noted that fraudulent conveyance and preference actions have been designated by Congress under the 1984 Amendments as "core matters" in which the bankruptcy courts may issue final judgments. *Id.* Despite this characterization, the Court reiterated its view that Congress cannot deny parties the right to a jury trial simply by creating a statutory scheme which leaves adjudication of certain matters to an administrative agency. Only when the matters to be adjudicated involve "public rights" can Congress place claims beyond the Seventh Amendment. The court then held that "a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) [is] more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." *Id.* at 2797. Therefore, Congress could not override the petitioners' right to a jury trial simply by designating certain actions a "core matters" to be

heard by a non-Article III tribunal.[6]

The Court in *Granfinanciera* stressed that its decision was not inconsistent with *Katchen v. Landy,* and if anything, flowed from it, stating:

> "Unlike Justice WHITE, ... we do not view the Court's conclusion in *Katchen* as resting on an accident of statutory history. We read *Schoenthal [v. Irving Trust Company,* 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932)] and *Katchen* as holding that, under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate, not upon Congress' precise definition of the 'bankruptcy estate' or upon whether Congress chanced to deny jury trials to creditors who have not filed claims and who are sued by a trustee to recover an alleged preference. Because petitioners here, like the petitioner in *Schoenthal,* have not filed claims against the estate, respondent's fraudulent conveyance action does not 'arise as part of the process of allowance and disallowance of claims.' Nor is that action integral to the restructuring of debtor-creditor relations. Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury. *Katchen* thus supports the result we reach today; it certainly does not compel its opposite."

*Id.* 109 S.Ct. at 2799. In a footnote following this passage, the Court added that its rationale in *Katchen* was not based on the notion that the petitioner had waived his right to a jury trial by filing a claim against the estate, but that "by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims, even though the debtor's opposing counterclaims are legal in nature and the Seventh Amendment would have entitled creditors

to a jury trial had they not tendered claims against the estate." *Id.* n. 14.

## IV. Application of *Katchen* and *Granfinanciera*

Under a mechanical reading of *Granfinanciera* and *Katchen,* the defendants' in this case are not entitled to a jury trial. *Granfinanciera* mandates a three-step process to determine whether a jury trial is required. *Germain v. Connecticut Nat'l Bank (In re O'Sullivan's Fuel Oil Co.),* 103 B.R. 388, 391 (Bankr.D.Conn.1989).

> Under this analysis, the initial step is to find whether a party's cause of action is one that could be tried before a court of law and, therefore, to a jury in England in 1791, and next, to determine whether the remedy sought is legal in nature. If it is concluded that both aspects of this test are met, the final step is to decide whether "Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." In this aspect of the analysis, if the claim asserts a "public right," Congress may deny the parties a jury trial without violating the Seventh Amendment. If the rights involved are "Private" in nature, the Seventh Amendment protects the litigants' right to a jury trial.

*Id.* (citations omitted).

In the *Frates* and *Rial* actions, clearly the majority, if not all, of the claims against the defendants seek legal relief, and therefore meet the first two requirements of the *Granfinanciera* Seventh Amendment analysis. The third question, whether resolution of the claims was properly assigned by Congress to the bankruptcy courts, again must be answered in favor of granting the defendants a jury trial, as *Granfinanciera* expressly held that fraudulent conveyance actions involve private, not public, rights. The same conclusion should be reached with respect to the

---

**6.** Interestingly, the Court expressly declined to rule on the constitutionality of a bankruptcy court conducting a jury trial. *See id.* 109 S.Ct. at 2794–95, 2802. Nevertheless, there is strong dicta in the Court's decision indicating that the Court would view this procedure as unconstitutional under both Article III and the Seventh

Amendment. It likewise appears that a majority of lower federal courts have adopted this conclusion. *See* Gibson, *supra,* at 1003–10; *e.g., Johnson v. State Farm Mut. Auto Ins. Co. (In re Guenther),* 65 B.R. 650, 652 (Bankr.D.Colo.1986) (holding withdrawal of the reference proper in non-core proceeding requiring jury trial).

breach of fiduciary duty, breach of contract, negligence, and other state-law claims.[7] Thus, the sole question is whether, by filing counterclaims against Kaiser as part of their answers to the adversary actions, the defendants have consented to the bankruptcy court's adjudication of these actions without a jury trial under *Katchen v. Landy,* thereby making *Granfinanciera* inapplicable.

The Supreme Court's analysis of *Katchen* in *Granfinanciera* focuses on the bankruptcy court's power "as part of the process of allowance and disallowance of claims" to " 'decide all matters in dispute and decree complete relief.' " 109 S.Ct. at 2799, n. 14 (citation omitted). In essence, it is based on the concept of personal jurisdiction, in that "[b]y presenting their claims respondents [have] subjected themselves to all the consequences that attach to an appearance." *Id.* at 2799 n. 14. In this instance, unlike *Katchen,* the defendants did not first file a claim against the estate. Their claims arise only in defense of Kaiser's action against them. Furthermore, the bankruptcy court has severed these counterclaims and ordered that they be treated as underlying claims against the estate, questioning its jurisdiction over the counterclaims in the process. Hence, the adjudication of the defendants' liability to Kaiser *will not* take place "as part of the allowance and disallowance of claims." It also seems anomalous that the bankruptcy court employed these counterclaims to assume jurisdiction and deny the defendants the right to a jury trial, yet it then severed the claims on the grounds that it had no jurisdiction. Neither *Granfinanciera* nor *Katchen* are helpful in this unusual situation, and with the exception of the few cases described below, other federal courts and authorities have not addressed the issue.

In *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties),* 781 F.2d 159 (9th Cir.1986), a creditor filed a breach of contract action in state court against the debtor before bankruptcy. When the debtor declared bankruptcy, the state court action was automatically stayed. The creditor filed for relief from the stay, and the debtor asserted state-law counterclaims in its answer. The bankruptcy court elected to try the debtor's counterclaims, but denied relief from the stay. The creditor then objected to the bankruptcy court's trying the counterclaims in the context of a relief from stay proceeding. When its motion was denied, the creditor filed an answer to the counterclaims and filed a Proof of Secured Claim in the bankruptcy. The bankruptcy court then tried the relief from stay issue and the debtor's counterclaims over the creditor's objections to its jurisdiction and entered judgment on the counterclaims for the debtor. *Id.* at 160. The bankruptcy court's rulings were reversed by the district court, and the debtor appealed to the Ninth Circuit.

In affirming the district court, the Ninth Circuit addressed the debtor's argument that the creditor had consented to the bankruptcy court's jurisdiction over the debtor's counterclaims by filing a proof of claim against the bankruptcy estate:

> [The debtor] relies on well-settled law that a creditor consents to jurisdiction over related counterclaims by filing a proof of claim. However, [the debtor] cites no case in which the filing of the proof of claim followed the bankruptcy

---

7. In contrast, public rights have been defined as rights that " 'arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments.' " *Granfinanciera,* 109 S.Ct. at 2795 n. 8 (citing *Crowell v. Benson,* 285 U.S. 22, 50, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932)). As noted by the Court in *Granfinanciera,* however, the federal government need not be a party to the case. Instead,

> [t]he crucial question ... is whether "Congress, acting for a valid legislative purpose

pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Id.* 109 S.Ct. at 2797 (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 593–94, 105 S.Ct. 3325, 3339–40, 87 L.Ed.2d 409 (1985). The Court then distanced itself from the position that the restructuring of debtor-creditor relations in bankruptcy is inherently a public right. *See id.* n. 11.

court's assertion of jurisdiction over counterclaims despite objections from the creditor. The purpose of the rule, to prevent a bankruptcy trustee from having "to split a cause of action by defending against the claim in the summary proceedings and then seeking affirmative relief in a plenary suit," is not served by forcing the creditor to file a proof of claim as a defensive maneuver, thereby conferring jurisdiction on the bankruptcy court. Asserting an affirmative defense does not constitute consent. By analogy, Piombo's filing the proof of claim should not be deemed consent.

*Id.* at 162–63.[8]

In its January 16 order, the bankruptcy court cited *In re Castlerock Properties*, rejecting its holding. *See* 95 B.R. at 788. Instead, it relied on the "general view" as set forth in dictum in *Interconnect Telephone Services, Inc. v. Farren*, 59 B.R. 397, 400–01 (S.D.N.Y.1986), and two cases citing *Interconnect*, *In re Honeycomb*, 72 B.R. 371 (Bankr.S.D.N.Y.1987) and *In re Kroh Brothers Dev. Co.*, 91 B.R. 889 (Bankr.W.D.Mo.1988), that "where the estate brings an action against a creditor and the creditor counterclaims asserting a set-off, it is entirely appropriate for the action to be classified as a core proceeding." These cases were decided before the release of *Granfinanciera*, when it was thought that there was no right to a jury trial in core matters, regardless of whether the issues were equitable or legal in nature. Furthermore, in *Interconnect*, the motion to withdraw the reference was granted, and the court's discussion on this issue was cursory. In both *Honeycomb*

and *Kroh Brothers*, the creditor demanding a jury trial had first filed a claim against the estate before the debtor initiated its counterclaim. Consequently, the authorities cited by the bankruptcy court in support of its holding hardly contain a reasoned analysis of this issue.

### V. *Conclusion*

With the Supreme Court's recognition of the importance of the right to a jury trial in *Granfinanciera*, perhaps the Court would now take a strict view of the circumstances under which a party will be deemed to have consented to the bankruptcy court's determination of its legal counterclaims which would otherwise carry with them the right to a jury trial, especially when the party has not acted first by filing a claim against the estate. There is little authority to support this position; yet, the cases which indicate that a party's defensive posture is irrelevant are not factually analogous and fail to analyze the issue critically. Under a literal reading of *Granfinanciera* and *Katchen*, however, the bankruptcy court's rulings should be affirmed.

Given the absence of a chartable course in these troubled waters, prudence persuades me to cling to that which is known. The rulings of the bankruptcy court striking the jury demands are AFFIRMED.

I am of the opinion that this matter involves a controlling question of law as to which there is substantial ground for a difference of opinion. I also believe that, if the parties so desire, an immediate appeal from this order will materially advance the ultimate termination of this litigation and will help to conserve the court's limited resources. *See* 28 U.S.C. § 1292(b). Be-

8. For the reverse of *In re Castlerock Properties*, see *Germain v. Connecticut Nat'l Bank (In re O'Sullivan's Fuel Oil Co.)*, 103 B.R. 388 (Bankr. D.Conn.1989), one of the few cases considering the jury trial issue after *Granfinanciera*. In *In re O'Sullivan's Fuel Oil Co.*, the trustee for the debtor filed an action against a creditor bank in state court, alleging willful interference with business relations, collusion, duress, fraudulent misrepresentation, RICO violations, breach of the duty of good faith, and unfair trade practices. The creditor removed the trustee's action to the bankruptcy court, and the trustee timely requested a jury trial and moved to withdraw the reference. The creditor moved to strike the

trustee's jury demand, arguing in part that, because it had asserted a claim against the estate, under *Granfinanciera* the trustee was not entitled to a jury trial. The bankruptcy court denied the creditor's motion to strike the jury demand, holding that "there is no hint in *Granfinanciera* that a bankruptcy trustee, per se, is ineligible to seek a trial by jury where he did not voluntarily submit the estate's claim to the jurisdiction of the bankruptcy court for resolution." *Id.* at 391. Thus, *In re O'Sullivan's Fuel Oil Co.* recognizes that the creditor's filing of a claim is not dispositive on the issue of a party's consent to the bankruptcy court's jurisdiction.

cause of the sheer size of the underlying bankruptcy and the number of parties involved, I respectfully request that such appeal be expedited.